JACOB RUSSELL *et al.,* Appellants, *v.* THE CITY OF CHICAGO, Appellee.

## APPEAL FROM COOK.

The Common Council of the city of Chicago had authority to appoint special collectors, under the charter of 1851, and whether they had this power or not, the collector elected was not justified in withholding monies, upon the ground that the fees received by such collectors belonged to him.

In an action of debt, a plaintiff cannot recover more than he claims by his declaration, nor can the damages on a penal bond be greater than the *ad damnum.*

SUMMONS in debt, $50,000; damages, $1,000.

The declaration in first count, avers that defendant owes $50,000, etc., and alleges that defendants executed their writing obligatory, binding themselves to pay the City of Chicago the sum of $50,000, conditioned that, whereas, defendant Russell was, on the 6th day of March, 1855, elected city collector of said city for one year, and until his successor should be duly elected and qualified, if said Russell should faithfully execute the duties of his said office, and account for and pay over all monies received by him as such collector, in accordance with the orders theretofore passed, or which might be passed by the Common Council of said city, and deliver all books, papers, and all other property belonging to the said city, to his successor in office, then said obligation to be void, otherwise to remain in full force.

Assigns as breach, that section six of article two (of the collection of taxes) of chapter fifty-eight, in page 418, of G. W. and Jno. A. Thompson's Compilation of Charter and Ordinances of City of Chicago, provides that the city collector shall pay into the city treasury, all moneys collected by him as fast as collected, and at least as often as every Monday the like funds collected by him, which said section and article were in force whilst said Russell was collector.

That said Common Council duly levied and assessed the taxes for the year 1855, and the clerk of said city duly delivered to said Russell on the 18th day of October, 1855, a warrant for the collection of the same, commanding him as city collector to collect the same. That said Russell, by virtue of said warrant, as such collector, received and collected the sum of $250,000, and failed to pay over into the city treasury, of such sum so collected, the sum of $3,188.13, whereby said writing obligatory has become forfeited, and an action hath accrued to the plaintiff to have of and from the said defendants the sum of $50,000 above demanded.

Second count, substantially as the first.

Third count, common count alleging indebtedness against all defendants of $50,000, on account stated, and for money had and received.

Breach, neglect of defendants to pay aforementioned sums.

*Ad damnum* to declaration, $1,000.

The sixth plea—to first and second counts—was as follows: That defendant Russell, as city collector, was wholly and solely authorized by law to collect, as well the special assessments for improvements and other municipal purposes levied and assessed by said city for the year 1855, as the regularly assessed taxes for said year, and was by law and of right, as such collector, wholly and solely entitled to all fees and commissions for the collection of such special assessments. That said Russell was, at all times during his term of office, ready and willing as such collector, to collect all monies due and owing to said city of Chicago, for special assessments, as well as the regular taxes assessed for said year 1855, and did notify the said city thereof, immediately after his said election as such collector. That the said city unlawfully refused to allow him to collect said special assessments, and unlawfully appointed and empowered certain others, not having legal authority so to do, to collect said special assessments.

That the sum of $3,188.13 was and is the just amount of fees and commissions for and upon the whole amount of said special assessments levied and assessed by said city for said year 1855, and collected, and no more, and that said Russell being such

Russell et al. *v.* City of Chicago.

collector as aforesaid as he well and lawfully might, kept and retained the said sum of $3,188.13, the amount of said fees and commissions for and upon said special assessments, so levied and collected as aforesaid.

Cause tried upon the issues, November 26th, 1858, by the court, by agreement of counsel, without a jury.

Judgment by the court, of debt against defendants, $50,000, and the court assessed damages at $3,611.09.

The errors assigned are as follows :

1st. The court erred in sustaining the demurrer of the plaintiff below (appellee), to the 6th plea of the defendants below.

2nd. The court erred in rendering judgment for the plaintiff below for $50,000 debt, and in assessing its damages at $3,611.09.

3rd. The court erred in allowing interest from July 15th, 1856, to November 26th, 1858, and in including said interest in the damages assessed.

4th. The court erred in rendering said judgment in its amount and form.

5th. The court erred in overruling the motion for a new trial, and in arrest of judgment, and in rendering the said judgment against the said defendants below, impleaded, etc.

CLARKSON & TREE, for Appellants.

E. ANTHONY, for Appellee.

WALKER, J. The first assignment of error, questions the decision of the Circuit Court in sustaining a demurrer to appellant's sixth plea. It was filed as a defense to the first and second counts of the declaration, and avers that appellant Russell, was, as city collector, wholly and solely authorized by law to collect as well the special assessments for improvements and other municipal purposes, levied and assessed by said city for the year 1855, as the regular assessed taxes for that year ; and was by law entitled to the fees and commissions for the collection of such special assessments. That he was at all times ready and willing to collect all special assessments, as well as the taxes for that year, and gave the city notice thereof, but the city refused to permit him to collect such special assessments, and unlawfully appointed and empowered other persons, not having legal power so to do, to collect such special assessments. And that $3,188.13, was the amount of fees and commissions upon the amount of the special assessments, so collected by other persons for the year 1855. And that appellant, Russell, kept and retained of moneys collected by him, the sum of $3,188.13,

the amount of the fees and commissions upon the special assessments, so levied and collected.

The first question raised by this plea, is whether the Common Council by their charter had legal authority to appoint collectors of special assessments. By the first section of chapter two of the amended city charter of 14th February, 1851, it is enacted that the officers of the city shall be, "A clerk; an attorney; a treasurer; a school agent; a marshal; a board of school inspectors; a board of health; one chief, and a first and second assistant engineers of the fire department; one or more collectors; etc." It is also enacted by the third section, that "At the annual election, there shall be elected by the qualified voters of said city, a mayor; marshal; treasurer; collector; surveyor; attorney; and chief and assistant engineers.  *  * At the same time the electors in their respective wards shall vote for one alderman, and one police constable, etc." The 5th section provides, that "The officers elected by the people under this act, (except aldermen), shall respectively hold their offices for one year, and until the election and qualification of their successors respectively. All other officers mentioned in this act, (except aldermen and firemen,) and not otherwise specially provided for, shall be appointed by the Common Council by ballot, on the second Tuesday of March in each year, or as soon thereafter as may be, and respectively continue in office one year, and until the appointment and qualification of their successors." The third section only provides, as it will be perceived, for the election of one collector, while the first authorizes "one or more collectors." Under this enactment, the city was required to have at least one collector, and he was required to be elected by the people, but they were authorized to have more, and the further number was not limited. And by the fifth section, the Common Council was empowered to appoint by ballot that further number. This authority was given when power was conferred upon them to appoint all officers not required to be elected by the people. There being but one collector required to be elected, it necessarily follows that when the city determined to have more, they were authorized to appoint such additional number. And when appointed, they succeeded to all the rights, privileges and duties, in collecting the dues of the city, so far as authorized by the city, as appertained to the collector elected by the people. No objection is perceived to limiting them, when thus appointed to a specified division of the city, or to the collection of a specified branch of the city revenue. We are therefore of the opinion, that the Common Council had the right to appoint collectors to collect the

special assessments, and that by so doing, they deprived appellant, Russell, of no legal right.

But if we are mistaken in this view of the question, we are at a loss to comprehend by what right the appellant, Russell, may retain these fees and commissions. If it were true that the Common Council had no authority to appoint such special collectors, it would not follow that the city had thereby become his debtor for these fees. It might be in case they had no authority, that a recovery could be had against those special collectors, for money had and received to his use, or an action maintained against the individuals composing the Common Council, if the appointment had been unauthorized by the charter, but the city surely could not have incurred any obligation to pay anything to him. It might as well be contended that the State or county incurs a liability for the payment of fees and commissions to persons deprived of office by an intruder, yet it is believed that such a doctrine has never been advanced, and would hardly be seriously contended for by any one. In all such cases the law holds the intruder liable to the person legally entitled to the office, for fees and emoluments received, by the person thus intruding into it. The collector, is claiming fees for services which he has not rendered for the city, and they have no authority under their charter to pay him, even if they were so disposed and were to attempt it. But in either point of view, the plea presented no defense, and the court committed no error in sustaining the demurrer.

It is also urged, that the court below erred, in finding the damages at $3,611.09, when the declaration only claimed one thousand. It has been repeatedly and uniformly held by this court, that in actions of debt on penal bonds, assigning breaches under the statute, that it is error, if the jury fail to find both the debt and damages. And that it is not form but substance, and the omission cannot be supplied by the court. And no rule of practice is better established, than that in an action of debt, the plaintiff cannot recover damages beyond the amount claimed in his declaration. And this rule has been applied by this court to recoveries on penal bonds for the performance of covenants or conditions; *Fornier* v. *Faggott*, 3 Scam. R. 347; *Stephens* v. *Sweeney*, 2 Gilm. R. 375. In these cases upon penal bonds, the judgments were reversed, because the damages found on the trial exceeded the *ad damnum* laid in the declaration, and they are in point and decisive of this case. Whatever our opinion might have been, were the question an open one, we regard the practice too long and too well settled by our adjudications to be now disturbed. To do so, would lead to more inconvenience than benefit. It is only a question of pleading and practice,

and if we were to reverse the former decisions of this court because they do not conform to the English decisions, it is believed that it would lead to more inconvenience than benefit. These decisions have long been recognized and acted upon by our courts and the profession, and in a matter so easy to be complied with, we can perceive no urgent necessity for overruling decisions repeatedly and deliberately made, simply to make them conform to those of another country.

The judgment must be reversed and the cause remanded, with leave to amend the declaration and writ.

*Judgment reversed.*