# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

SECOND DISTRICT—DECEMBER TERM, 1898.

## The People, etc., ex rel., etc., v. H. H. Blair.

1. DEMURRER—*Does Not Admit the Pleader's Conclusions.*—A demurrer does not admit the pleader's conclusions, nor the construction placed by him upon statutes, nor the correctness of his inferences from the facts stated.

2. CITY MARSHAL—*Office Abolished by the Adoption of the General Law.*—The adoption by a city of the general law for the incorporation of cities, operates *eo instanto* to abolish the office of city marshal.

3. SAME—*Under the General Law.*—Under the general law there can be no office of city marshal unless the city council, after organization thereunder, creates it by ordinance directing whether such officer shall be appointed or elected.

4. CITIES AND VILLAGES—*Effect of Reorganization upon the City Marshal.*—Where a municipality under a special charter reorganizes under the general law, the continuance of the office of city marshal, and the officer holding it, is repugnant to it, as it might defeat the intent of the general law.

5. SAME—*What is Necessary to Carry the General Law into Effect.*—In order that the law may be carried into effect it is necessary that the adoption of the general law shall operate to abolish the old office of city marshal, and to terminate instantly the functions of the prior incumbent, so that the city council of the new city be left in a position to legislate with entire freedom upon the subject.

6. OFFICERS—*Terms of, Where Not Fixed By Ordinance—City Marshal.*—The city marshal of a city incorporated under the general act, where no term is fixed by the ordinance creating the office, is entitled to hold for two years unless the council during such period by ordinance prescribes a shorter term.

The People v. Blair.

7. CITIES—*Mayors pro tem.*—There can not be two acting mayors of a city at the same time. During the time a mayor *pro tem.* is presiding, if he is lawfully appointed, every act done elsewhere by the regular mayor, as such, must necessarily be void.

8. SAME—*When a Mayor pro tem. May Be Appointed and When a Chairman.*—When the mayor is present in the city, acting as mayor or able to perform the duties of the office generally, but is absent from a council meeting, either because he merely chooses to be absent, or because he is engaged in official business in another part of the city, or is ill, the power of the council is confined to electing a temporary chairman, who will possess the authority of presiding officer only and not of mayor.

9. SAME—*Powers of the Council in Mayor's Absence.*—The fact that the mayor had been derelict in his duty to nominate a city marshal, and that the preservation of public order demanded the appointment of such an officer, does not justify the council in taking the reins of power from the mayor and appointing a mayor *pro tem.* who will make the nomination.

10. MUNICIPAL OFFICERS—*Terms of Office.*—Municipal officers appointed or elected for a fixed term hold over till the election or appointment and qualification of their successors, unless a contrary legislative intent is manifest, and no such contrary legislative intent appears in the general act for the incorporation of cities.

11. SAME—*When the Mayor Delays an Appointment.*—If the mayor delays an appointment, either an unreasonable time, or longer than suits the pleasure of the council, that body thereby acquires no right to deprive him of his functions and appoint one of its own number to take the desired action. The courts furnish the remedy to compel an officer to perform his duty.

**Information Quo Warranto.**—Trial in the Circuit Court of McHenry County; the Hon. CHARLES H. DONNELLY, Judge, presiding. Judgment for relator on demurrer to plea; appeal by respondent. Heard in this court at the December term, 1898. Reversed and remanded with directions. Opinion filed April 11, 1899.

V. S. LUMLEY, State's Attorney, R. K. WELSH, CHAS. H. FISHER and J. M. MARKS, attorneys for appellant.

The office of city marshal was created, the duties of that officer prescribed, and the term of office fixed at two years, unless sooner removed by the appointing power, by the ordinance of the city of Marengo, passed May 7, 1895, and the statutory provisions in relation to that office. Ordinance of May 7, 1895, Abst. p. 9, Chap. 24 of Revised Statutes.

The office of city marshal, marshal, or superintendent of police of the town of Marengo, was abolished and the ordinance of December 10, 1892, therefore repealed by the incorporation of the city of Marengo under the general law. People v. Brown, 83 Ill. 95; Crook v. People, 106 Ill. 237; McGrath v. Chicago, 24 Ill. App. 19.

When the object and reason for which a statute ordinance or law was passed is removed by a later enactment, the later law acts as a repeal of the former. Geisen v. Heiderich, 104 Ill. 537; Enos v. Buckley, 94 Ill. 458; Ency. of Law, Vol. 23, p. 489.

By the provisions of Section 11, Art. 1, Ch. 24, R. S., all ordinances, resolutions and by-laws in force in any city or town when it organizes under the general law continue in full force and effect until repealed or amended; it is not intended that any such existing by-law, resolution or ordinance which is in conflict with the provisions of the new charter should be regarded as kept in force; only such as are enforcible are preserved. Baader v. Town of Cullman (Ala.), 22 So. Rep. 19; People v. Brown, 83 Ill. 95.

The ordinance of the city of Marengo passed May 7, 1895, repealed the ordinance of the town of Marengo passed December 10, 1892, even if there had been no incorporation under the general law at all. The ordinance of 1895 follows closely the language of the statute, legislates upon the entire subject except such part as is covered by and included in the statutory law itself, and is clearly intended to be the only legislation upon the subject. Dingman v. The People, 51 Ill. 277; Booth v. Carthage, 67 Ill. 102; Andrews v. People, 75 Ill. 605; Devine v. Commissioners, 84 Ill. 590; Chicago v. James, 114 Ill. 479; People v. Nelson, 156 Ill. 364; People v. Loeffler, 175 Ill. 585, 51 N. E. Rep. 785; People v. Davis, 114 Cal. 363; Keese v. Denver, 10 Col. 112; Swindell v. State, 143; Ind. 153; Vonderleith v. State, 37 Atl. Rep. (N. J.), 436; Schmalzreid v. White (Tenn.), 36 S. W. Rep. 393; Kent v. U. S., 73 Fed. Rep. 680; Vol. 23 Ency. of Law, p. 485, and authorities there cited; Heckman v. Pinkney, 81 N. Y. 211.

The People v. Blair.

The foregoing rule is true, even though material parts of the former act are omitted in the later. Schmalzreid v. White, 36 S. W. Rep. 393; Terrell v. State, 86 Tenn. 523.

The term of office of the city marshal of Marengo being fixed only by the general statute was limited to two years, and when Dunwoody was appointed in May, 1897, his appointment under the law then in force was for a period of two years, unless sooner removed by the mayor. The appointment is for the full term of the office even though a shorter term be designated by the appointing power, and the fact that the mayor named him again in May, 1898, makes no difference. Sec. 3, Art. 6, Chapter 24; City of Jacksonville v. Allen, 25 Ill. App. 54; Forristal v. People, 3 Ill. App. 470; Robb v. Carter, 65 Md. 321; People v. Robb, 126 N. Y. 180; Patten v. Vaughn, 39 Ark. 211; People v. Hill, 7 Cal. 97; Williams v. Broughner, 46 Tenn. 486; Hale v. Biscoff (Kas.), 36 Pac. Rep. 752; Throop on Public Officers, Secs. 304, 354, and authorities there cited.

The fact that Dunwoody's bond may not have been approved as required by the statute does not vacate the office. The city council recognized him as an officer for a whole year after the giving of the bond. He did all that he could do. He executed the bond, delivered it to the clerk, who is the clerk of the council, and to the mayor, who is a member of the council. Under such circumstances nothing short of an actual disapproval of the bond could vacate the office. The silence of the council and its records on the subject for such length of time amounts to an approval. The statutory provision in this respect at most is only directory. Davis v. Haydon, 3 Scam. 35; Green v. Wardwell, 17 Ill. 278; Bartlett v. Board of Education, 59 Ill. 364; Boone Co. v. Jones, 54 Ia. 699; State v. Barnes, 51 Kas. 688; Apthorp v. North, 14 Mass. 167; State v. Dahl, 65 Wis. 510; State v. Knight, 82 Wis. 151; Throop on Public Officers, Secs. 184 and 185.

Where there is a limit placed to the term of office there must be an express removal by the appointing power before a successor can be appointed within that term. The appoint-

ment of a successor is not *ipso facto* a removal. Until such removal there is no vacancy. Clark v. People, 15 Ill. 213; State ex rel. Reimer v. Curry, 134 Ind. 133.

The statutes prescribe the method by which any officer may be removed. A well worn rule of law says that the statutory expression of one method excludes all others. Sec. 7, Art. 2 of Chap. 24, R. S.; Gaddis v. Richland Co., 92 Ill. 119; Loverin v. McLaughlin, 161 Ill. 425.

The demurrer to respondent's plea admits nothing except facts well pleaded therein. It does not admit inferences from them nor conclusions of the pleader. Greig v. Russel, 115 Ill. 488; Johnson v. Roberts, 102 Ill. 658; Arenz v. Weir, 89 Ill. 25; Harris v. Cornell, 80 Ill. 62; Ebersole v. First Nat'l Bank, 36 Ill. App. 267; People v. Cooper, 139 Ill. 461.

In a quo warranto proceeding where the respondent justifies by his plea, claiming title to the office, he must, by apt averments, clearly show a valid title to the office. A plea of justification showing title to the office, defective in any particular, is not sufficient. Clark v. People, 15 Ill. 213; People v. Ridgley, 21 Ill. 65; Gunterman v. People, 138 Ill. 518.

The mayor of cities incorporated under our general law acts in a dual capacity. First, as the chief executive officer of the city, with all the functions pertaining to that office; and, second, as a member and presiding officer of the city council. Secs. 1-6, Article 2, Chapter 24, R. S.; City of Carrollton v. Clark, 21 Ill. App. 74.

The power of appointment when vested in the mayor by legislative enactment is an executive function, or a function to be exercised as chief executive officer of the city, and not as a member of the council. In re Achley, 4 Abb. Pr. 35; State v. Barbour, 53 Conn. 76; Taylor v. Com, 3 J. J. Marsh, 401; State v. Noble, 118 Ind. 361; State v. Hyde, 121 Ind. 20; People v. Sanderson, 30 Cal. 160; In re Supervisors, 114 Mass. 247; Atty. General v. Varnum, 167 Mass. 477; People v. Morgan, 90 Ill. 562.

A mayor *pro tem.* can exercise the functions of the office

of a mayor only when the mayor is temporarily absent, not from a meeting of the council, but from the city, or under disability which prevents him from exercising his duties as mayor in both of his capacities as executive officer and member of the council. When the mayor is only temporarily absent from a meeting of the city council, and still in the city and exercising the functions of his office as chief executive, the power of the council with reference to a presiding officer is circumscribed by the right to elect a temporary chairman.

See and compare Sections 2, 3, 4 and 5, Art. 2, entitled " Of the Mayor," and Section 10 of Art. 3, entitled " Of the City Council," of Chap. 24 of the Revised Statutes.

A statute must be so construed that effect will be given to every word and sentence contained in the act so that no part will be inoperative or superfluous. A statute must also be interpreted according to its intent and meaning and not always according to its letter. Words and expressions which are implied may be added. I. C. R. R. Co. v. C. B & N. R. R. Co., 122 Ill. 481; Farwell v. Cohen 138 Ill. 232; I. C. R. R. Co. v. Chicago, 138 Ill. 459; People v. Chicago, 152 Ill. 546; Root v. Sinnock, 24 Ill. App. 537; Perry Co. v. Jefferson Co., 94 Ill. 215; People v. Hoffman, 97 Ill. 234; Anderson v. C., B. & Q. R. R. Co., 117 Ill. 26; People v. Blackwelder, 21 Ill. App. 254; Part 1, Sec. 2, Chap. 131, entitled "Statutes," of the Revised Statutes of Illinois.

The word "may " in the expression " It (referring to the city council) may elect a temporary chairman in the absence of the mayor," found in Sec. 10 of Art. 3 of Chap. 24 of the Revised Statutes, means and should be read shall. Kane v. Footh, 70 Ill. 587; Fowler v. Pirkins, 77 Ill. 271; James v. Dexter, 112 Ill. 489; Brokaw v. Commissioners, 130 Ill. 482.

The expression temporary absence, used in Sec. 4, Art. 2, should be read, and means temporary absence from the city. The expression in the absence of the mayor, used in Sec. 10, Art. 3, should be read and means in the absence of the mayor from the meeting. Cline v. Seattle, 43 Pac. Rep. (Wash.) 367.

When the mayor is absent from the meeting of the city council, the council can not by the selection of a mayor *pro tem.* thereby clothe such mayor *pro tem.* with the power of the mayor unless one of the specified contingencies under which the mayor *pro tem.* can act clearly exists. A plea justifying under such an appointment must specifically and clearly show such contingency. State ex rel. Clark v. Board of Health of Trenton, 17 Am. & Eng. Cor. Cases (N. J.) 296.

Courts are zealous in protecting the rights, prerogatives and functions of an executive officer elected by the people. Mayor of Detroit v. Moran, 46 Mich. 213; State v. Graham, 21 Am. Rep. 551.

On August 2, 1898, no emergency existed which would warrant the calling into exercise of any extraordinary power of appointment, for even on the theory of respondent's plea that the ordinance of December 10, 1892, is still in force, in so far that it fixes the term of city marshal at one year, yet it is undeniably a fixed rule of law in this country that in the absence of an express prohibition to the contrary an officer appointed for a certain term holds over until his successor is legally appointed and qualified, and in such case he holds as an officer *de jure.* People v. Trustees of Fairbury, 51 Ill. 149; Forristal v. People, 3 Ill. App. 470; People v. Hill, 7 Cal. 97; Stratton v. Oulton, 28 Cal. 45; People v. Stratton, 28 Cal. 382; City of Central v. Sears, 2 Col. 588; State v. Fagin, 42 Conn. 32; Walker v. Ferrill, 58 Ga. 512; State v. Harrison, 16 N. E. R. (Ind.) 386, and authorities there cited; Walsh v. Commissioners, 89 Pa. St. 419; Throop on Public Officers, Sec. 325, and authorities cited; Dillon on Mun. Corporations, Vol. 1, Sec. 219, and authorities cited; Tiedeman on Mun. Corporations, Sec. 81; Am. and Eng. Ency. of Law, Vol. 19, p. 562.

A. B. Coon, E. D. Shurtleff and Bottsford, Wayne & Bottsford, attorneys for appellee, contended that the city council were the sole and best judges of the necessity of selecting a mayor *pro tem.*, instead of a chairman, and having so selected a mayor *pro tem.*, the statute conferred on him

all of the powers of the mayor.  Section 4 of Article 2 of Chapter 24, S. & C. R. S.; State v. Walker, 68 Mo. App. 110, 117.

Even though the ordinance of May, 1895, was all of the legislation in force in 1897 or in 1898, the subject of the city marshal, and the ordinance of 1892 in regard to the "Police Department," was, by re-organization, entirely repealed, yet the ordinance of May, 1895, providing for the "appointment of a city marshal," not in any manner fixing the term of said office, the term, as left by the ordinance of 1895, is "at the will" of the appointing power (that is the mayor and city council), and not for a period of two years. See The People v. Carrique, 2 Hill (N. Y.), 98; Penn. Co. v. Dunlap, 13 N. E. Rep. 496; Williamson v. City of Gloucester, 19 N. E. Rep. 348; People v. Robb, 27 N. E. Rep. 267.

The reorganization of a city or village from a special charter, to the general law for reorganization, while it may, and does abrogate all such offices, under the special charter that are not provided for in the general law, and determines the tenure of all such officers, yet such change and reorganization does not abrogate the police department of any city or village so reorganizing, nor does it repeal any of the regulations of the police department.  Sheridan et al. v. Colvin et al., 78 Ill. 237.

Counsel insisted that the mayor and relator having been governed in 1897 by the terms of the ordinance of 1892, in certifying as to the amount of the bond, approving it and recognizing its validity, that the term of city marshal was only for one year, had expired in May, 1898, by reappointing him, and also by having appointed from time to time special policemen under said ordinance, that he ought to be estopped from claiming that none of the provisions of the ordinance of 1892 were in effect in 1887 or 1898.  Pursel v. State ex rel. Roney, 12 N. E. Rep. 1003, 1004, 1005; People v. Waite, 70 Ill. 25, 27.

The office of mayor is not a franchise, and like every other office created by statute, confers no vested right, but is held simply for the benefit of the people.  Tiedman on

Municipal Corporations, 67; Dillon (4th Ed.), Sec. 208; Kreitz
v. Behrensmeyer, 149 Ill. 496, 503; People v. Loeffler, N.
E. Ill. Rep. 785.

MR. PRESIDING JUSTICE DIBELL, delivered the opinion of
the court.

This is an information to test the right of H. H. Blair to
hold and execute the office of city marshal of the city of
Marengo, which it was averred he had usurped without right.
Blair filed a plea, setting up in detail his title to the office.
The relator, Lester Barber, mayor of said city, demurred to
the plea. The court overruled the demurrer, the relator
abided thereby, and judgment for costs was rendered against
him, from which judgment he appeals. The question pre-
sented, is whether the plea shows Blair had title.

The briefs on each side concede that till 1893 the inhab-
itants of Marengo were incorporated as a town under a
special charter. (Private Laws of 1857, p. 331.) The plea
shows an ordinance was adopted in 1892 concerning the
police department, which provided for a city marshal, to be
appointed at the first regular meeting of the town trustees
in May of each year, to hold office during the municipal
year, give bond in the sum of $1,000, with security to be
approved by the president, and with certain prescribed
duties. In 1893 Marengo became incorporated under the
general law. In 1895 its city council adopted an ordinance
which created the office of city marshal; authorized the
mayor to fill it by appointment, subject to the approval of
the city council; and enacted that the city marshal "shall
perform such duties as shall be prescribed by the city
council for the preservation of the public peace, and the
observance and enforcement of the ordinances and laws;"
have the power of a constable and serve civil process within
the corporate limits. The ordinance did not fix the term of
the office. On May 11, 1897, Joseph Dunwoody was
appointed and confirmed city marshal, and thereafter did
certain things by way of qualifying. On May 17, 1898, he
was again nominated as city marshal. On June 21, 1898,

the nomination was rejected. On August 2, 1898, the mayor was absent from a council meeting on account of illness, and the council appointed Alderman Eshbaugh mayor *pro tem.* The latter nominated Blair as city marshal, the council immediately confirmed the appointment, and Blair gave bond, which was approved at that meeting, and took the oath of office. The plea seeks to show that Dunwoody never properly qualified, and therefore was never legally city marshal; that the ordinance of 1892 remained in force, except as modified by the ordinance of 1895, and therefore the term was but one year, and if Dunwoody ever held the office his term expired in May, 1898; that at the meeting of August 2, 1898, the council had power to appoint Eshbaugh mayor *pro tem.*, and the latter had power to make the nomination.

The plea avers that by reason of defects in Dunwoody's attempt to qualify in May, 1897, he never became a legal city marshal, and the office remained legally vacant. The plea does not state directly whether Dunwoody thereafter undertook to and did act as city marshal and perform the duties of that office, though that may fairly be inferred from the absence of allegation, but it sets out proceedings of the council showing that body by a vote, recognized him as a *de facto* city marshal, and directed that he be paid for services performed by him up to June 11, 1898, "while a *de facto* officer." With this in the plea and in the absence of other allegation, it must be assumed against the pleader that immediately upon Dunwoody's appointment, confirmation and giving bond in May, 1897, he entered upon the duties of the office of city marshal and thereafter continued so to act till Blair obtruded into the office, as there is no allegation Dunwoody ever ceased to act as city marshal. Blair can not here assail Dunwoody's title for irregularities in the manner of qualifying, for Dunwoody is not a party and his title is not in issue. The question whether Dunwoody had a perfect title to the office can only be raised by quo warranto against him. Burgess v. Davis, 138 Ill. 578. As he was appointed and confirmed, gave bond and

entered upon the duties of his office, we are of opinion he is to be considered, for the purposes of this suit, a *de jure* officer.

If, however, we treat the supposed defects as open to investigation here no different result is reached. The defects alleged in the argument are that Dunwoody's bond was not approved by the council and that he did not take an official oath. The instrument set out in the plea shows he did execute a bond with a surety, that the signers acknowledged it, that it was approved by the mayor and filed with the clerk. The acknowledgment is dated the day after it was filed, but the plea does not charge Dunwoody withdrew it from the files, and we may therefore fairly assume it was acknowledged at the clerk's office. When Dunwoody filed the bond with the city clerk he in effect presented it to the council, as that officer is the keeper of the records and files pertaining to the business of the council. If Dunwoody had brought the bond to the council meeting his orderly course would have been to hand it to the clerk. He did deposit it with the clerk, and it then become the duty of the council to act upon it. The plea does not aver that the bond was insufficient in form or security, or that any reason for disapproving it existed, or that the council was ignorant that it was in the hands of the clerk. While the council did not formally approve the bond, its records set out in the plea show it treated Dunwoody as city marshal and voted him pay as such for more than a year thereafter. It thus treated the bond as sufficient. The action of the council implied an approval. Bartlett v. Board of Education, 59 Ill. 364; Green v. Wardwell, 17 Ill. 278. The ordinance of 1895 did not fix the penalty of the official bond, but section 4 of article 6 of the general act allows the penalty to be fixed by resolution or ordinance. The plea shows there was no other ordinance, but does not aver but what the penalty was fixed in this case by resolution.

The plea does not aver Dunwoody did not take an oath of office. It does set out the bond, and attached thereto a

paper apparently prepared by some one for the signature of the city clerk, dated in June, 1898, which states no oath of office is on file in the office of the clerk, and none was given to his knowledge. But as set out in the plea in the record before us, this paper is not signed by any one. If it had been signed it was no proper part of an official certificate. The incorporation into the plea of this unsigned statement attached to the bond is not an allegation by the pleader that Dunworthy did not take an official oath. The plea also sets out a lengthy notice, signed by certain aldermen, addressed to the mayor and clerk and Dunwoody, which recites that Dunwoody never took an official oath; and also certain resolutions adopted by the council June 21, 1898, which declare, among other things, that Dunwoody had never taken an oath of office. In our judgment the insertion of these papers in the plea is not equivalent to an allegation by the pleader that Dunwoody did not take an official oath. It merely avers that there are certain papers and proceedings which assert that he did not. In the absence of averment we must assume that Dunwoody's title was not defective in that respect. We therefore hold that respondent is not entitled to attack Dunwoody's title for mere irregularities, and that the defects he argues are not shown by the plea, to exist.

What was the term of office to which Dunwoody was appointed in May, 1897? The ordinance of 1892 made the term of city marshal expire with the municipal year. The plea avers the city was incorporated under the general law in 1893, but that the ordinance of 1892 remained in full force till the beginning of this suit, except as modified by the ordinance of 1895. Whether incorporation under the general law repealed the previous ordinance is a question of law. The statement of the plea that said ordinance of 1892 remained in force is not an allegation of fact, but a legal conclusion. A demurrer admits only such facts as are well pleaded. It does not admit the pleader's conclusions of law, nor the construction placed by him upon the statutes, nor the correctness of the inferences from the facts stated.

(McPhail v. People, 160 Ill. 77; Fish v. Farwell, 160 Ill. 236; Craig v. Russell, 115 Ill. 488; Henderson v. Farrelly, 16 Ill. 137; 1 Chitty's Pl. 662.) We consider it settled by The People ex rel. v. Brown, 83 Ill. 95, and Crook v. People ex rel., 106 Ill. 237, that the adoption by Marengo of the general law for the incorporation of cities in 1893, operated *eo instanti* to abolish the office of city marshal. Under the general law there can be no city marshal unless the city council, after incorporation thereunder, adopts, by a two-thirds vote, an ordinance providing for such an officer and directing whether he shall be appointed or elected. Hence, where a municipality under a special charter, and with such an office and officer, reorganizes under the general law, the continuance of the office and officer would be repugnant to the new law. To permit the prior ordinance establishing the office of city marshal to remain in force might defeat the intent of the general law. There might not be two-thirds of the alderman under the new organization who would vote to establish the office, and yet there might not be a majority vote to repeal the old ordinance. In order that the new act may be carried into complete effect it is necessary that the adoption of the general law shall operate to abolish the old office of city marshal and to terminate instantly the functions of the prior incumbent. Then the city council of the new city is left in a position to legislate with entire freedom upon the subject, and such is the intention of the statute. When the office of city marshal of Marengo was abolished by incorporation under the new law, the provisions of the ordinance of 1892 relating to the office necessarily fell with it. We are unable to see the force of the argument that though the office was abolished yet the ordinance, establishing the office and fixing its duration and duties and the manner of choosing the incumbent, remained in force. We hold the ordinance was repealed in 1893, so far as it related to the office of city marshal. The ordinance of 1895 indicates that the council so understood. Its language did not refer to an office already in existence, but in express terms created the office of city marshal. It

The People v. Blair.

did not direct a performance by the city marshal of the duties theretofore prescribed by the old ordinance, but imposed duties which "shall be prescribed by the city council." The framers of that ordinance indicated by its terms that they were establishing an office not then in existence.

Section 3 of article 6 of the general law enacts that the council may by ordinance prescribe the term of appointive offices, but that the term shall not exceed two years. Dunwoody was appointed and confirmed as city marshal, and entered upon the duties of that office, without the term of said office having been then or since fixed by ordinance. In May, 1898, the mayor renominated him, but he was not confirmed. No doubt the mayor at that time supposed the ordinance of 1892 was in force. If Dunwoody's term did not in fact expire in 1898 the mayor's unnecessary act of renominating him did not mislead or injure any one, and no ground of estoppel against the mayor or Dunwoody appears in the plea. The question then is, what was the term of the city marshal under said ordinance of 1895, and the statute? Our conclusion is, the appointee was entitled to hold the office two years unless the council during the said two years by ordinance prescribed a shorter term. This could not be done by resolution, because the statute requires that the term be fixed by ordinance. Therefore the resolutions adopted by the council June 21, 1898, declaring the office of city marshal vacant, did not fix or affect Dunwoody's term. Under section 7 of article 2 of the general act the mayor may temporarily remove an officer and file charges, but no such action is alleged here. The averments in the plea that there was a legal vacancy in the office from and after May 17, 1898, are mere conclusions of the pleader, not admitted by the demurrer. We therefore hold Dunwoody's term was two years from May, 1897, subject to be cut short by a future ordinance fixing a lesser term. On August 2, 1898, there was, therefore, no vacancy to which respondent could be appointed, and the action then taken was nugatory and conferred upon him no right to exercise the office of city marshal. This conclusion defeats the plea, and disposes of the case before us.

We will, however, further consider the case as if the term was one year and expired in May, 1898. Did the city council have power to appoint Eshbaugh mayor *pro tem.* on August 2, 1898, and thereby confer upon him the power of nomination? Certain allegations of the plea as to the mayor's absence from the council meeting at that date are mere narration of hearsay evidence, and other allegations are expressly on information and belief. This is not good pleading in an action at law. The only allegation of fact well pleaded on this subject is the following: "Respondent avers that the mayor of said city was temporarily absent from said meeting during the entire time of said meeting, and that the said mayor was disabled by sickness from attending the said meeting." Did the fact so alleged authorize the council to appoint an alderman mayor *pro tem.* and endow him with the authority of mayor?

Article 2 of the general incorporation act provides that the mayor shall reside within the city limits and hold his office for two years; that if he shall remove from the limits of the city his office shall thereby become vacant; that if a vacancy of one year or over shall occur it shall be filled by election, and if less than one year the council shall elect one of its members mayor, with all the rights and powers of mayor, till the next annual election. Section 4 of said article 2 enacts: "During a temporary absence or disability of the mayor, the city council shall elect one of its members to act as mayor *pro tem.* who, during such absence or disability, shall possess the powers of mayor." Section 6 says the mayor shall preside at all meetings of the city council. Section 10 of article 3 provides that the city council "may elect a temporary chairman in the absence of the mayor." To determine whether the plea shows the mayor was absent or disabled we must ascertain his powers and duties, and where they may properly be exercised and performed. The powers and duties of mayor are found in various parts of said act. He is the chief executive officer of the city, directed to "take care that the laws and ordinances are faithfully executed." Within the city limits he

has the power of a sheriff to suppress disorder and keep the peace. He must perform all duties prescribed for him by law and the city ordinances; he has the power to nominate all non-elective officers and to fill all vacancies in offices, except those of mayor and alderman, subject to the approval of the council. He has the right to remove, temporarily, any officer he has appointed, and to release any person imprisoned for the violation of the city ordinances. He has power at all times to inspect the records and papers of every agent, employe and officer of the city. He is required to give the council annually and from time to time, information relative to the affairs of the city, and to recommend such measures as he deems expedient. He may call out the male inhabitants to aid in enforcing the laws and ordinances, and may call out the militia to suppress riots, subject to the authority of the governor. All ordinances adopted by the council must pass under his supervision and are subject to his approval or veto. He is a conservator of the peace, may make arrests, and administer oaths. No city funds can be paid out of the treasury without his signature to the warrant therefor.

From this incomplete resume it is manifest the mayor has many duties to perform and many powers to exercise outside the council chamber. In suppressing disorder, inspecting the books and papers of the various officers, enforcing the laws and ordinances, considering the qualifications of citizens for offices, over which he has the nominating power, preparing annual and other messages to the council relative to city affairs, considering what measures it is expedient he shall recommend to the council, examining ordinances previously passed to determine their legality and propriety, and whether he will approve or veto, he is performing functions which can not be suitably exercised while he is presiding over the council in session. The performance of these duties is just as binding upon him as his duty to preside at the council meeting. Sometimes these duties may make his presence in another part of the city necessary or proper at a time appointed for a

council meeting. The plea does not aver that the mayor was unable to perform any of the duties of his office on August 2, 1898, except to attend the council meeting. We must assume the plea states the entire disability under which the mayor was then laboring, and that the mayor was at that date entirely competent to perform every duty of his office except that one. For aught appearing in the plea, the mayor may then have been engaged in some other duties of his office; he may then have been considering the qualification of some other person for city marshal, or preparing a message to the city council, or considering the legality of some ordinance then pending before him for approval or veto, or may have been acting upon some application to discharge a city prisoner.

The construction contended for by respondent would produce great confusion. There can not be two acting mayors of the city at the same time. During the one or two hours the mayor *pro tem.* is presiding, if he is lawfully appointed, every act done elsewhere by the regular mayor as such must necessarily be void. If the latter is at his office or home preparing an important veto message, the mayor *pro tem.* while in the chair can sign the ordinance. He can remove officers the mayor has appointed, fill all vacancies in appointive offices, veto ordinances the mayor intended to sign, and revolutionize the policy of the mayor. But the instant the council adjourns the power of the mayor *pro tem.* must, in a case like the present, necessarily cease, for the regular mayor is in the city and just as able as the *pro tem.* mayor to perform all the other duties of the office. If the powers of the mayor *pro tem.* do not then cease, how long may he continue to act after the council adjourns, where the mayor is in the city, competent for all his other duties? Many other examples might be given of the confusion which would result from the position here taken by the respondent.

In our judgment the legislative intent was not what respondent supposes. While the mayor resides in the city he is not required to always remain within its limits. He may be rightfully absent from the city on business or

pleasure; when he is outside the city there is no one present to perform the functions of his office, and the necessity exists for a mayor *pro tem.* The disability referred to in section 4 of article 2 of the general law we are of opinion is not a disability to perform some one of his many duties, but a temporary disability to act as mayor; such a disability as is produced by serious and continued illness, temporary insanity and the like. In case of absence from the city or of such disability, when there is no one who can act as mayor, it becomes the duty of the council to elect one of its number mayor *pro tem.* and he will possess the powers of mayor till the mayor returns to the city or so far recovers his health as to be able to resume the duties of his office. If, however, he is present in the city acting as mayor or able to perform the duties of that office generally, but is absent from a council meeting, whether because he merely chooses to be absent, or because he is engaged in city business in another part of the city, or because he is ill, then, in our judgment the power of the council in that respect is confined to electing a temporary chairman, who will possess the authority of presiding officer only and not of mayor. This construction gives effect to each section of the statute and does not lead to confusion.

It is further contended that the mayor had been derelict in his duty to nominate a city marshal; that the preservation of public order demanded the appointment of such an officer, and that this justified the council in taking the reins of power from the hands of the mayor and appointing a mayor *pro tem.* who would make a nomination.

The plea does not show such a state of facts, nor in our judgment does the law permit the council to redress its own grievances in such fashion. First. It does not follow from the facts pleaded that after May, 1898, the office of city marshal became legally vacant, so that there was no one who could legally discharge its duties and preserve order in the city. Municipal officers appointed or elected for a fixed term hold over till the election or appointment and qualification of their successors unless a contrary legis-

lative intent is manifest. (Dillon on Municipal Corpora-
tions, Secs. 158, 159.) No such contrary legislative purpose
appears in the general act for the incorporation of cities.
Therefore Dunwoody (on the assumption we are now mak-
ing, that his term was one year) held over and was legally
entitled to the possession of his office and to execute its
duties till his successor was appointed and qualified; and
the council could not, by the resolutions of June 21, 1898,
drive him out of that office before his successor was selected
and qualified. The council had no authority to take such
action. Second. The mayor and council seem to have been
about equally responsible for the delay. If Dunwoody's
term was under the ordinance of 1892 (as we are now as-
suming), and ended with the municipal year, the plea does
not state when that year closed. Dunwoody was first ap-
pointed May 11, and filed his bond May 26, 1897. At the
council meeting May 17, 1898, the mayor made several ap-
pointments which were confirmed, and reappointed Dun-
woody for city marshal, which appointment, the record of
that date set out in the plea says "was not confirmed."
Neither the plea nor the record says the appointment was
voted upon and rejected at that meeting, and evidently no
action was then taken, for the plea avers, and the record set
out therein says, that on June 21, 1898, the council voted
not to approve the appointment of Dunwoody as city mar-
shal. The council thus took one month and four days to
determine whether or not it would confirm Dunwoody, for
which delay the mayor was not responsible. From June
21 to August 2, one month and eleven days, the delay in
making another nomination is chargeable to the mayor; that
is, at the latter date he had then delayed seven days longer
than the council. But certainly he was entitled to a rea-
sonable time after the rejection of his first nomination in
which to select a new appointee, before any neglect of duty
could be imputed to him. The facts therefore did not just-
ify the council in charging the mayor with neglect of duty.
Third. We can not hold it to be the law that if the mayor
delays an appointment, either an unreasonable time, or
longer than it suits the pleasure of the council, that body

thereby acquires the right to deprive him of his functions and appoint one of its own number to take the desired action. The courts furnish the remedy to compel an officer to perform his duty. The law has not lodged with the city council the power here asserted for it in argument.

We are therefore of opinion that Dunwoody's term was two years from May, 1897, and that if it were but one year the appointment of a mayor *pro tem.* was unauthorized by law, and Eshbaugh only acquired the authority of chairman and his action in nominating respondent was void, and that Blair had no title to the office.

The judgment is reversed and the cause remanded to the court below, with directions to sustain the demurrer to the plea, and enter judgment of ouster. Reversed and remanded.