## Andrew McKean v. Theodore Gauthier.

### Gen. No 4,785.

1. STATUTES—*canon of construction.* In the construction of statutes, special provisions do not give way to general clauses, but the contrary is the rule.

2. VILLAGES—*power of appointment when organized under general act for incorporation of cities and villages.* The power of appointment to appointive offices in villages organized under the general act for the incorporation of cities and villages rests in the president and board of trustees jointly.

3. OFFICE—*what does not affect appointment to.* An appointment to office in a village, if made by the properly constituted authority, is not affected by a mere irregularity in procedure.

4. MANDAMUS—*when question as to right to office does not arise in.* A proceeding by *mandamus* does not seek to try the title to an office where the petition is filed by a person in office who had entered upon the duties thereof, and was acting therein when he filed his petition, where he seeks merely by such proceeding to compel the doing of the acts necessary to the collection by him of salary earned in office.

5. ABBREVIATIONS—*when objection to absence of explanation of, comes too late.* An objection that an abbreviation has no legal meaning comes too late when first raised on appeal.

*Mandamus.* Appeal from the Circuit Court of Grundy county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed March 13, 1907.

D. R. ANDERSON, for appellant.

E. L. CLOVER, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

In this suit in *mandamus* brought by appellee against appellant, president of the village of Coal City, to compel the latter to sign a warrant for appellee's salary as night watchman, the main question is, who has the power of nominating to an appointive office in a village organized under the general act for

the incorporation of cities and villages. That act gives mayors in cities the power of appointing to an appointive office, by and with the advice and consent of the city council. The mayor has the sole power of nominating, and the city council the sole power of confirming or rejecting. People v. Blair, 82 Ill. App. 570, and Blair v. People, 181 Ill. 460. Article 11 of that act relates solely to villages. Section 8 thereof, as originally enacted in 1872, provides for the election of six trustees, and authorizes them to select one of their own number for president; and provides that whenever the words "city council" or "mayor" occur in the act, they shall apply to the trustees and president, so far as applicable. Section 9 authorizes the president to perform the duties and exercise the powers of the mayor of a city, and also to vote as a trustee, and authorizes the president and board of trustees to exercise the powers conferred upon the mayor and city council of a city, and to pass ordinances in like manner, and gives the president the veto power of the mayor, and the board of trustees the power of a city council to pass an ordinance over a veto. Section 11 provides: "The president and board of trustees may appoint a clerk *pro tempore,* and whenever necessary to fill vacancies; and may also appoint a treasurer, one or more street commissioners, a village constable, and such other officers as may be necessary to carry into effect the powers conferred upon villages, to prescribe their duties and fees, and require such officers to execute bonds as may be prescribed by ordinance." By this act, the president was one of the trustees. It was the design of the statute that he should not lose the power and authority of a trustee by his subsequent selection as president. Section 8 was amended in 1879, but not in a matter material here. In 1887 it was enacted that the president should be elected in addition to the six trustees, and that he should preside at all meetings of the board, and have the same powers and perform the same duties

as are or may be given by law to the president of boards of trustees in villages, except that he should not vote, save in case of a tie. That act contained a general repealing clause, and had the effect of modifying section 8 of said article 11 of the general act. Said act of 1887 was amended in 1903 so as to also give the president the power of the mayor in cities. Thereafter said section 11 of article 11 was amended in 1905, by changing the word "constable" to "marshal." That amendment re-enacted the provision that the president and board of trustees should appoint the officers therein enumerated, and such other officers as might be necessary to carry into effect the powers conferred upon villages. This being later than said amendment of 1903, would prevail over it, if they conflict. Our attention is not called to any other statute bearing upon the question before us.

Appellant contends that if we interpret section 11 to give the president and board of trustees the power of appointment that will make it conflict with section 9, and with the act of 1887, which conferred upon the president of a village the powers of the mayor of a city, and that to avoid this conflict we should construe section 11 as meaning that the president may nominate such officers, and that the board of trustees may confirm or reject the nomination. This would change the meaning of section 11, which confers the power to "appoint" upon the president and board of trustees. The power to confirm or reject a nomination made by some one else is not the power to appoint. That construction would deprive the board of trustees of all power of selecting and nominating a person to fill the office. If section 9 and the act of 1887 had not given the president the powers of the mayor in cities, no one would doubt that by section 11 the power of appointment was conferred upon the president and the board of trustees jointly. Statutes giving a city council the power to appoint to office have been enacted and sus-

tained. Russell v. City of Chicago, 22 Ill. 283; Wilder v. City of Chicago, 26 Ill. 182; Launtz v. People, 113 Ill. 137.

In the construction of statutes, special provisions do not give way to general clauses, but the contrary is the rule. It is said in Endlich on Interpretation of Statutes, sec. 399, that where an act contains general provisions and also special ones upon a subject which, standing alone, the general provisions would include, the special provisions indicate an intention that it is not to be deemed included in the general provisions, and the latter are held not applicable. "Where, therefore, there is, in the same statute, a particular enactment, and also a general one which, in its most comprehensive sense, would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment." This rule of construction was recognized and applied in Dodge v. City of Chicago, 201 Ill. 68, and in the cases there cited. Therefore section 11 of article 11 of the statute relating to cities and villages is to be treated as creating an exception to section 9 thereof. As said section 11 was re-enacted in 1905, its particular provisions must prevail, also, over the general language of the act of 1887. Section 9, therefore, means that the president of a village is to have the power of the mayor of a city, except where otherwise specially provided; and by section 11 the power of appointment to office is specially vested in the president and board of trustees, and not in the president alone. This question was before this court in Rowley v. People, 53 Ill. App. 298, where, speaking of said section 11, we said: "Another method of filling this office in villages is provided by section 188, chapter 24, of Hurd's edition. That section provides that it shall be filled by appointment of the president and board of trustees. Under

that section, the president is possessed of no greater power in the appointment of a treasurer than that of a trustee. He is a member of the body by virtue of his office, and, as such, he has the same voice in the appointment of a treasurer that any member elected as trustee has." While that case related to the office of treasurer, to which a mayor could not appoint, still, it cannot be intended that the same words in section 11 mean one thing when applied to a treasurer, and another thing when applied to a policeman or night watchman.

The reason for the original enactment of section 11 is more apparent when we consider that the statute at that time did not provide for the election of a president separate from the trustees. Six trustees were elected, and they selected a president from their own number, and he could vote with the other trustees on every proposition. It was no doubt thought advisable by the legislature to give the power of appointment to the entire body, and not to one member only. When the position of president was afterwards made an elective office separate from that of trustee, the legislature saw fit to continue that mode of appointment in villages, and to re-enact it in 1905. It follows that in our view of the statute the power of appointment rested in the president and board of trustees jointly.

Conceding that there were irregularities in procedure, for which, however, appellant was as much responsible as any one, yet the fact remains that the records of the village board show that the term of the two night watchmen theretofore acting for the village had expired, and that thereafter, on May 22, 1906, the president and the six trustees were present at a regular meeting of the board, and upon a call of the roll four trustees voted that appellee be appointed night watchman, and two voted against his appointment, and that the president did not vote, having previously

at that meeting requested to be excused from voting on all nominations for office. Mere irregularities in the manner of putting the question cannot avail appellant here, when the roll was called, and a vote had and recorded, and when the irregularities would not have occurred but for an error of judgment on the part of appellant. Appellee's appointment to the office, therefore, was complete. The records of the village show that at the next regular meeting, on June 5th, his bond as night watchman, in the terms required by an ordinance, was presented, and approved by a like roll call, and that he then subscribed and filed his oath of office. His appointment and qualification for the office thereby became complete. He thereupon entered upon service as night watchman, and so continued to the time of this trial. An ordinance fixed the salaries for that and other offices, and provided for weekly payments thereof, and the warrants in question which the president refused to sign were in the proper amounts for the first fractional week and for the second week of his service.

Appellant argues that this is a suit to try the question whether appellee or Victor Pierard is entitled to the office. Such a question cannot be determined in *mandamus*. But we are of opinion such is not the object of this suit, and for two reasons: first, appellee had been appointed, had given a bond which the board had approved, had taken and filed an official oath, and had entered upon the duties of the office, and was so acting when he began this suit. He is not a person out of office seeking to obtain the office. He is in office, and performing its duties, and seeking the signature of the president to enable him to draw his salary. Second, while there had been but two night watchmen during the year before appellee's appointment, yet the ordinance only provided for "night watchmen," without specifying the number, and therefore the corporate authorities had power to appoint as

many watchmen as they deemed proper and necessary, and if Pierard is also serving as night watchmen by lawful authority, that fact could not deprive appellee of the salary attached to the office to which he has been appointed, for which he has qualified, and which he is filling.

The warrants were drawn against "The O. S. Fund," and specified that they are charged to that fund. It is argued that the letters "O. S." have no legal meaning, and were not explained. This objection was not made below, and if it had been, would no doubt have been obviated. Appellee states that those letters mean "Official Salaries Fund." The objection cannot first be made here, where further proof cannot be received. It is argued that the petition does not show an appropriation made and money on hand from which the warrants could be paid. There is, perhaps, still another defect in the petition, not mentioned by counsel. If appellant had demurred to the petition or in any way raised these points in the court below, we must assume an amendment and the corresponding proof would have followed. These objections were not made below, and no propositions of law were presented. The defenses there were that the president alone had power to nominate and that the board could not appoint, but only confirm or reject the selections of the president, and that this was an improper effort to try the title to an office. We deem it our duty to make the case turn here upon the questions tried below. The judgment awarding a *mandamus* is, therefore, affirmed.

*Affirmed.*